UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALAN M. SMITH,

                Petitioner,             **REPORT AND RECOMMENDATION**
                                           **No. 03-CV-6553(DGL)(VEB)**

    -vs-

TIMOTHY MURRAY,

                Respondent.

_____

## I.      Introduction

      Petitioner Alan M. Smith ("Smith" or "petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a guilty plea on September 11, 2000, to one count of driving while intoxicated as a class D felony in satisfaction of indictment 2000-85. Pursuant to 28 U.S.C. § 636(b), United States District Judge David G. Larimer referred this matter to the undersigned for the issuance of a report and recommendation regarding the disposition of Smith's petition. For the reasons set forth below, the Court recommends that the petition be dismissed and that a certificate of appealability be denied as to all of Smith's claims.

## II.     Jurisdiction

      According to the New York State Department of Correctional Services inmate-information website (http://nysdocslookup.docs.state.ny.us), Smith was released from custody on August 8, 2006, to parole. For a federal court to exercise jurisdiction over a habeas petition, the

petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  However, a petitioner need not be physically confined to satisfy the "in custody" requirement.  *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (*per curiam*). A petitioner whose criminal conviction causes him to suffer substantial restraints on his freedom not borne by the public generally has recourse to habeas relief. *See*, *e.g.*, *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963) (holding that prisoner's release into custody of parole board is significant restraint on freedom within meaning of habeas corpus statute).  Parole consistently has been held to constitute such a restraint. *See Jones v. Cunningham*, 371 U.S. 236, 241-43 (1963); *United States ex rel. Johnson v. Department of Corr. Services of the State of N.Y.*, 461 F.2d 956, 958 n.1 (2d Cir. 1972) ("As we said in *United States ex rel. Sadness v. Wilkins*, 312 F.2d 559, 560 (2d Cir. 1963), '[The Supreme Court's] opinion in *Jones v. Cunningham*, [371 U.S. 236] (1963), now makes clear that a prisoner who is released upon parole remains "in custody" within the meaning of federal habeas corpus jurisdiction, 28 U.S.C. § 2241, and that release upon parole does not render moot an appeal from a habeas corpus proceeding conducted prior to release.'"); *accord Pappadakis v. Warden, Metropolitan Corr. Ctr.*, 822 F.2d 240, 242 n.2 (2d Cir. 1987).  The fact that Smith currently is paroled does not deprive the Court of jurisdiction to decide the case nor does it render the petition moot. Therefore, determination of the merits of Smith's petition is appropriate.

III.   **Factual Background**

On September 11, 2000, Smith pled guilty in Steuben County Court (Latham, J.), to one count of Driving While Intoxicated, a class D felony, in satisfaction of Indictment 2000-85 charging him additionally with Aggravated Unlicensed Operation of a Motor Vehicle in the First

Degree, a Class E felony. Smith's plea was part of a consolidated plea agreement which also encompassed  pleas on September 11, 2000, in Steuben County Court to Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree (a Class E felony) in satisfaction of  Superior Court Information 2000-254W, and to Criminal Contempt in the Second Degree (a misdemeanor) in satisfaction of Superior Court Information 2000-255W. *See* Plea Agreement and Colloquy, submitted in connection with Respondent's Answer (Dkt. #4); *see also* Resp't Ans. at 1, ¶5 (Dkt. #4). These pleas covered all charges in the foregoing accusatory instruments, as well as an additional unindicted arrest for Criminal Contempt in the First Degree and pending charges of domestic abuse. *See id.* In return for his guilty plea, Smith was offered a sentence promise of not more than an indeterminate term of incarceration, the maximum being 7 years and the minimum being 2 1/3 years on the conviction for Driving While Intoxicated, *Per Se* (Indictment 2000-85); 1 to 3 years on the conviction for Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree (SCI 2000-254W); and 1 year on the conviction for Criminal Contempt in the Second Degree (SCI 2000-255W), those sentences to be served concurrently. *See id*. The plea agreement signed by Smith included a waiver of his appellate rights. *See id.* Smith was sentenced in accordance with the plea agreement on November 27, 2000. The trial court also recommended that Smith be admitted to the "SHOCK camp" program.

Smith appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court, asserting only that his sentence was improper. The Appellate Division unanimously affirmed the conviction . Smith did not seek leave to appeal to the New York Court of Appeals.

Smith subsequently brought a *pro se* motion to vacate the judgment pursuant to New

York Criminal Procedure Law ("C.P.L.") § 440.10 arguing that he was denied his right to a speedy trial and that trial counsel rendered ineffective assistance. The Steuben County Court (Latham, J.) issued an Order dated October 18, 2002, stating summarily that Smith's application was "denied."

Smith raises the following claims in his habeas petition: (1) "Violation of the Right to Due Process. There is a 17 Month delay between arrest and indictment[,]" *see* Pet. at 5 (Dkt. #1); (2) "Speedy Trial Right Violation[,]" *see* Pet. at 5 (Dkt. #1); and (3) "Ineffective Assistance of Trial Counsel[,]" *see* Pet. at 6 (Dkt. #1); *see also* "Appendix B Memorandum of Law", attached to Pet. (Dkt. #1); Petitioner's Traverse ("Trav.") (Dkt. #6). Respondent asserts that Smith's first and third claims are without merit and that his second claim is not cognizable on federal habeas review.

## IV.   Discussion

### Claim One:   Undue delay between arrest and indictment violated petitioner's right to "due process."

Smith contends that the delay of seventeen (17) months between his arrest on October 11, 1998, and his indictment on March 14, 2000, violated his right to due process. Pet. at 5 (Dkt. #1). Smith states cryptically, "[c]ourt record absent of showing cause for delay" and "[c]ourt record is invisible [sic] from filing of felony complaint to the filing of indictment." Pet. at 5 (Dkt. #1). In his Traverse, Smith cites cases which suggest that he is asserting a claim that his Sixth Amendment right to a speedy trial was violated. Respondent argues that a seventeen-month delay is not violative of due process, *per se*, and because Smith has alleged neither prejudice resulting from the delay nor that the prosecution deliberately delayed indicting him, his speedy trial claim

must be denied. *See* Resp't Mem. at 1 (Dkt. #5).

Smith was arrested on charges of felony driving while intoxicated ("DWI") and first degree aggravated unlicensed operation of a motor vehicle on October 11, 1998, and arraigned in Cameron Town Court on November 2, 1998. After posting bail, Smith was released. Because he had a previous DWI felony conviction in June 1996, Smith enrolled in an alcohol treatment program in an attempt to reduce his sentencing exposure on his current charges, and his attorney forwarded an executed "speedy trial" waiver to the prosecution on January 27, 1999. *See* People's Affirmation in Opposition to Petitioner's C.P.L. § 440.10 Motion, ¶6 and Speedy Trial Waiver attached as Exhibit A thereto. Plea negotiations broke down, Smith was indicted on March 14, 2000, and the prosecution announced trial readiness on March 27, 2000. During this time, Smith continued to be released on bail previously posted. *See* Resp't Mem. at 2 (Dkt. #5).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . . " U.S. CONST. AMEND. VI. The Supreme Court has identified four factors that a court should consider in passing on a petitioner's claims that pretrial delays in state court denied him his Sixth Amendment right to a speedy trial: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). With respect to the first factor, both the Supreme Court and the Second Circuit have found that no constitutional speedy trial violation occurred in cases in which the period between arrest and trial was even longer than the seventeen months at issue here. *E.g.*, *Flowers v. Warden, Connecticut Corr. Institution, Somers*, 853 F.2d 131, 133 (2d Cir. 1988) ("As to the first factor, length of the delay, we note first that the 17-month delay here, while lengthy, is nevertheless considerably shorter than those in other cases where we have

found no speedy trial violation.") (citing *United States v. McGrath*, 622 F.2d 36 (2d Cir.1980) (24 months); *United States v. Lane*, 561 F.2d 1075 (2d Cir.1977) (58 months)*; United States v. Cyphers*, 556 F.2d 630 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977) (33 months); *United States v. Mejias*, 552 F.2d 435 (2d Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977) (21 months); *United States v. McQuillan*, 525 F.2d 813 (2d Cir.1975) (26 months); *United States v. Lasker*, 481 F.2d 229 (2d Cir.1973), *cert. denied*, 415 U.S. 975 (1974) (2 years); *United States v. Fasanaro*, 471 F.2d 717 (2d Cir.1973) (over 4 years); *United States v. Saglimbene*, 471 F.2d 16 (2d Cir.), *cert. denied*, 411 U.S. 966 (1973) (6 years); *United States v. Schwartz*, 464 F.2d 499 (2d Cir.), *cert. denied*, 409 U.S. 1009 (1972) (4 1/2 years); *Barker v. Wingo*, 407 U.S. at 533-34 (over 5 years); *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir.1988) (over 7 years); *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir.1977) ("The delay here was quite lengthy approximately 58 months or just under five years but nevertheless was shorter than that in other cases in which no Sixth Amendment violation has been found."); *United States v. Infanti*, 474 F.2d 522, 527 (2d Cir.1973) ("[The length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary."). Thus, the pre-trial delay of seventeen months does not constitute a *per se* violation of Smith's Sixth Amendment right to a speedy trial. The Court accordingly proceeds to consider the remaining three *Barker v. Wingo* factors.

With regard to the second factor, the Supreme Court has stated that "[c]losely related to length of delay is the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531. A "deliberate attempt to delay the trial in order to hamper the defense," *Barker v. Wingo*, 407 U.S. at 531, should be weighted heavily against the state court prosecutor. *Id.* Respondent

suggests that the only basis for delay in this case "appears to be Petitioner's desire to enter into

alcohol rehabilitation before the case progressed, as evidenced by the speed trial waiver forward

[to the assistant district attorney handling Smith's case]." Resp't Mem. at 3 (Dkt. #5). Smith

apparently contests the validity of his speedy trial waiver, stating in his Traverse that the

"purported speedy trial waiver which fail [sic] to have any type of legality, first because it is

silent as to the record [sic], second Petitioner had no knowledge of such waiver, third Petitioner

has to knowingly and voluntarily waive his Constitutional Rights to be legally binding[;] this did

not happen and is varified [sic] be [sic] Court Records." Trav. ¶3C (Dkt. #6). Attached to

Smith's Traverse is an Affirmation signed by James Miller, an attorney from the Steuben County

Public Defender's Office, who apparently was assigned to represent Smith in connection with his

C.P.L. § 440.10 motion made in July 2002. In his Affirmation, defense counsel Miller asserts that

Smith "was totally unaware of the purported Waiver of his C.P.L. 30.20 and 30.30 rights until his

appearance on August 17, 2002[,] when he reviewed counsel's copy of the People's Affirmation

[in opposition to the C.P.L. § 440.10 motion] and the attached letter of Attorney Degnan

[waiving C.P.L. §§ 30.20 and 30.30 speedy trial rights]. . . ." There is no affidavit from Smith

attached to defense counsel's affirmation.  The waiver letter from Smith's former defense

counsel reads, in relevant part, as follows:

> This is to confirm our conversation of January 26, 1999 relative to the above
> mentioned [case]. Mr. Smith has entered the MATCH program and should be
> there for 28 days. This letter confirms the extension of the offer and I will waive
> 30.30 and 30.20 from January 26th 1999 until revoked by letter.

Notably, Smith does not dispute that he participated in the "MATCH" alcohol rehabilitation

program. Moreover, Smith never raised the issue of delay at any of his court appearances. The

Court therefore finds that Smith's claim that he was not consulted regarding the speedy trial waiver is not credible.  Respondent points out that in the intervening period between Smith's arrest in October 1998 and indictment, he was arrested on other felony offenses, which were charged in the superior court informations and which the plea agreement ultimately disposed of.

In any event, Smith has neither alleged nor established that the delay resulted from "deliberate procrastination," "negligent inaction," or an "attempt to obtain a tactical advantage" on the part of the district attorney's office. On the record before it, the Court finds no evidence of a "deliberate attempt to delay the trial in order to hamper the defense," *Barker v. Wingo*, 407 U.S. at 531, on the part of the state court prosecutor. This factor therefore does not weigh in petitioner's favor.

The third *Barker v. Wingo* factor takes into account the defendant's responsibility to assert his right to a speedy trial. *Barker*, 407 U.S. at 531. Here, Smith raised no complaints about his speedy trial rights until the filing of his post-judgment C.P.L. § 440.10 motion on August 22, 2002, twenty-one (21) months after he pled guilty on September 11, 2000, and more than two and one-half years after he was indicted on March 27, 2000. Moreover, Smith did not raise any issue as to the delay when he appeared in court to plead guilty, nor did he raise it as an issue on his direct appeal.  Smith's own delay in asserting that his right to a speedy trial was violated weighs against finding that any constitutional violation occurred. *See Barker*, 407 U.S. at 531-32 ("The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.").

-8-

The final *Barker* factor is whether prejudice inured to the defendant as a result of the delay. *See Barker*, 407 U.S. at 532.  Prejudice should be evaluated in the light of the interests which the Sixth Amendment was designed to protect–preventing oppressive pretrial incarceration, minimizing the accused's anxiety and concern, and limiting the possibility that the defense will be impaired. *Id.* As respondent points out, Smith had been released after posting bail, so he was not incarcerated during the time at issue. Nowhere in his pleadings in the state courts or in support of his habeas petition does Smith allege how he personally, or the defense of his case, was prejudiced by the delay. Moreover, the Court can find no prejudice to petitioner on the record before it.

After reviewing the circumstances of Smith's case in light of the four *Barker* factors, the Court cannot find that a violation of his Sixth Amendment right to a speedy trial occurred.  The seventeen-month delay, although not insubstantial, was not presumptively prejudicial and did not result from any negligence or willfulness on the part of the prosecution. Smith did not assert that his right to a speedy trial was violated until well after his direct appeal was concluded and his conviction had become final. Finally, Smith has not alleged how he was prejudiced as a result of the delay, and the Court finds no prejudice on the record before it. Accordingly, the Court recommends that petitioner's Sixth Amendment claim alleging a violation of his right to a speedy trial be denied. *See Flowers v. Warden*, 853 F.2d at 132-34 (finding that a 17-month delay which did not result from "deliberate procrastination," "negligent inaction," or an "attempt to obtain a tactical advantage" and which prejudiced the defendant only to the extent that he was incarcerated and suffered from "prolonged anxiety and concern" did not warrant habeas relief, despite the defendant's "numerous assertions of his right to a speedy trial").

**Claim Two:   "Speedy Trial Right Violation"**

As his second claim for habeas relief, Smith asserts only that "[c]ourt could not show any court recorded proof that there was not unreasonable delay in prosecuting defendant where a delay of 17 months existed between date of arrest and the date at which the people announced their readiness for trial." Pet. at 5 (Dkt. #1). This is the extent of petitioner's argument on this point. Respondent has interpreted Smith's second claim as alleging a violation of Smith's New York state rights under C.P.L. § 30.30. *See* Resp't Mem. at 4. Criminal Procedure Law § 30.30 requires the prosecution to announce its readiness for trial within six months of commencement of a criminal action where the defendant is charged with a felony, *see* N .Y.Crim. Proc. Law § 30.30(1)(a), with that deadline extended under certain circumstances.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68  (1991). "It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Estelle*, 502 U.S. at 67-68). C.P.L. § 30.30 sets forth a statutory time frame in which the People of the State of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial. *People v. Anderson*, 66 N.Y.2d 529, 535 (N.Y. 1985). The New York Court of Appeals has held that "[a]lthough CPL 30.30, like 30.20, is entitled 'speedy trial', and in large part serves the same purposes, the history of its adoption makes evident that it addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense[.]" *Id.* (citations omitted). Therefore, as respondent argues,

Smith's claim based on CPL § 30.30 does not raise a federal constitutional claim upon which federal habeas relief may be granted. *Accord, e.g.*, *People ex rel. Wesley v. Riordan*, No. Civ.A.CV-05-3958(DGT), 2005 WL 2148959, at *2 (E.D.N.Y. Sept. 7, 2005)); *Singh v. Fischer*, No. 03-CV-4128 (JG), 2004 WL 2999106, at *4, n. 4 (E.D.N.Y. Dec. 29, 2004) ("Singh's claim that the state court erred in its decision regarding his speedy trial rights under New York state law is not cognizable on [federal] habeas review."); *Wilson v. Goord*, No. 00 Civ. 4849(LTS), 2004 WL 226149, at *4 (S.D.N.Y. Feb. 6, 2004) ("[E]ven if Petitioner's statutory speedy trial right was violated, Petitioner has failed to raise a constitutional claim that is cognizable on federal habeas corpus review."); *Gibriano v. Attorney General of the State of New York*, 965 F. Supp. 489, 491-492 (S.D.N.Y. 1997) (denying habeas relief and noting that "Section 30.30 [of the New York Criminal Procedure Law] is a statutory time in which the People of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial."); *Rodriguez v. Miller*, No. 96 Civ. 4723(HB), 1997 WL 599388, at *2 (S.D.N.Y. Sept. 29, 1997) ("[A] C.P.L. § 30.30 claim has been held not to raise the federal constitutional speedy trial claim for purposes of a federal habeas petition."); *Jackson v. McClellan*, No. 92 Civ. 7217(JFK), 1994 WL 75042, at *2 (S.D.N.Y. Mar. 4, 1994) (holding that petitioner failed to fairly present constitutional speedy trial issue to state court where petitioner argued "entirely in terms of New York Statutory law [C.P.L. § 30.30]"). Accordingly, to the extent that Smith's second claim for relief alleges a violation of his state statutory rights under C.P.L. § 30.30, the Court recommends that it be dismissed as not cognizable on federal habeas review.

     The Court notes that in defense counsel Miller's response affirmation submitted on behalf

of  Smith in connection with the C.P.L.§ 440.10 motion to vacate the judgment, counsel also alleged a violation of Smith's rights under C.P.L. § 30.20. Section 30.20 is titled "Speedy trial; in general" and states that "After a criminal action is commenced, the defendant is entitled to a speedy trial." N.Y. Crim. Proc. Law § 30.20(1). By contrast, Criminal Procedure Law Section 30.20 does embody the federal constitutional right to a speedy trial. *Id.* at 534 ("The speedy trial guarantee established by the 6th Amendment to the Federal Constitution [ ] [is] embodied in CPL 30.20 and Civil Rights Law § 12 . . . ."); *accord*, *e.g.*, *Gibriano v. Attorney Gen.*, 965 F. Supp. at 491-92 (citing *Woodard v. Berry*, No. CV-90-1053, 1992 WL 106508, at *2 (E.D.N.Y. Apr. 24, 1992)).

To the extent that Smith's second claim for habeas relief can be interpreted as asserting a violation of his rights under C.P.L. § 30.20, which has been held to embody the Sixth Amendment's speedy-trial guarantee, the Court finds that it is cognizable on habeas review but nevertheless does not entitle him to habeas relief. In *People v. Taranovich*, the New York Court of Appeals set forth five factors to ascertain if a defendant's Sixth Amendment right to a Speedy Trial have been denied: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay." *People v. Taranovich*, 37 N.Y.2d 442, 445 (N.Y. 1975). The *Taranovich* factors essentially mirror the four-part inquiry outlined by the Supreme Court in *Barker v. Wingo* to determine whether a defendant's speedy trial right had been violated by prosecutorial delay: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530; *accord Doggett v. United States*, 505 U.S. 647 (1992).

Evaluating Smith's constitutional speedy trial claim under the *Taranovich* factors, which are in all essential respects the same as the *Barker* factors, the Court finds that there has been no constitutional violation for all of the reasons set forth above in this Court's evaluation of Smith's first claim for habeas relief. *See People v. Taranovich*, 37 N.Y.2d at 447 ( "A one-year delay between the alleged occurrence of a crime and an indictment for a class C felony, even when it results from prosecutorial inattention, in and of itself does not entitle a defendant to a dismissal of the indictment where there is no lengthy pretrial incarceration and no apparent impairment of his defense caused by the delay."). To the extent Smith's second claim alleges a violation of C.P.L. § 30.20, the Court accordingly recommends dismissing it as without merit.

**Claim Three:**          **Ineffective Assistance of Trial Counsel**

Smith asserts that trial counsel exhibited a "[l]ack of zeal" in his investigation and "failure to advise and protect defendants [sic] best defense and Constitutional rights." Pet. at 6 (Dkt. #1). He also asserts that trial counsel erroneously failed to "set forth motion for dismissal of Indictment 2000-85 due to prosecution exceeding statute set forth in the United States Constitution [sic]." *Id.* Based on his Traverse, it appears that Smith is asserting that trial counsel erred in failing to move to dismiss the indictment pursuant to C.P.L. § 30.30, New York's readiness-for-trial statute. *See* Trav. at 2 (Dkt. #6).

In order to succeed on a claim that he was denied the effective assistance of counsel in violation of his Sixth Amendment rights, a defendant must demonstrate both (1) that counsel's performance was deficient, *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The "performance" component necessitates a showing that the defendant's attorney "made errors so serious that [he or she] was not

functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* Demonstrating "prejudice" requires the defendant show that "but for counsel's unprofessional errors," there is "a reasonable probability" the "result of the proceeding would have been different." *Id.* at 694. A failure to make the requisite showing on either ground defeats an ineffectiveness claim. *See id.* at 697. Where a defendant has pleaded guilty on the advice of counsel, the "prejudice" component requires a showing that counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, the reviewing court must ask whether there is a "reasonable probability" that, without the mistakes made by counsel, the petitioner still would have elected to plead guilty rather than proceed to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Turning first to Smith's claim that trial counsel did not properly investigate his case and failure to put forward his "best defense," Pet. at 6 (Dkt. #1), Smith makes the conclusory assertion that an "investigation would have shown the prosecution had no case." The Court notes that Smith has never alleged that had he received different advice from counsel, he would have elected to proceed to trial.  Thus, Smith has failed to allege or demonstrate prejudice resulting from trial counsel's performance. *See Hill v. Lockhart*, 474 U.S. at 58.

Moreover, the Court finds that trial counsel provided effective assistance, securing a favorable plea bargain that disposed of three accusatory instruments (one indictment and two superior court informations) charging him with numerous felonies and one set of uncharged offenses. *See* Resp't Mem. at 5-6 (Dkt. #5).  Indictment 2000-85 charged Smith with three felonies: driving while intoxicated *per se* (class D felony); driving while intoxicated (class D felony); and aggravated unlicensed operation of a motor vehicle (class E felony). Superior Court Information 2000-254W charged Smith with two felonies: first degree aggravated unlicensed

operation of a motor vehicle (class E felony) and driving while intoxicated (class D felony).

Superior Court Information 2000-255W charged Smith with one felony: first degree criminal

contempt (class E felony). Pursuant to the plea agreement, Smith was permitted to plead guilty to

*two* Vehicle and Traffic Law felonies (one count of driving while intoxicated and one count of

aggravated unlicensed operation of a motor vehicle) and one misdemeanor (the criminal

contempt first charge was reduced to criminal contempt second). Furthermore, he secured a

sentence promise that his terms of incarceration would be concurrent. Respondent notes that had

Smith proceeded to trial and been convicted on all of these charges, he faced the possibility of

consecutive sentencing because each set of charges arose out of a separate occurrence. *See* N.Y.

Penal Law § 70.25. In addition, respondent asserts, Smith faced enhanced sentencing as a second

felony offender with respect to any Penal Law felonies on which he was convicted.

Smith's unsupported complaints about counsel's representation are insufficient to

repudiate his previous sworn statements in his signed, sworn Plea Agreement and Colloquy that

he was knowingly and voluntarily pleading guilty upon the advice of counsel. *See also*

September 11, 2000 Transcript of Plea at 11, 17-20. On this record, Smith has failed to

demonstrate that trial counsel performed deficiently in recommending that Smith plead guilty or

in negotiating the favorable plea agreement to which Smith ultimately agreed. Furthermore, any

complaint that Smith makes regarding trial counsel's performance in negotiating the plea

agreement is undermined by the fact that prior to entering his plea, he asked for attorney Degnan

to be relieved from representing him due to their fee agreement and for attorney Travis Barry

"who [wa]s assigned" to take over his case. *See* September 11, 2000 Transcript of Plea at 4-5.

After asking to confer with attorney Barry, Smith did not decide to change course–rather, he

proceeded to enter the guilty plea pursuant to the exact terms negotiated by his previous counsel.

The Court turns to the other aspect of his ineffective assistance claim which alleges that trial counsel erred in failing to move to dismiss Indictment 2000-85 based on the prosecution's alleged failure to announce readiness for trial in compliance within the time-limits set forth in C.P.L. § 30.30.  After being arrested in October 1998 on felony charges of driving while intoxicated and aggravated unlicensed operation of a motor vehicle, Smith enrolled in "MATCH," an alcohol dependency treatment program in order to reduce his possible exposure. Through defense counsel, Smith waived his speedy trial rights under C.P.L. §§ 30.30 and 30.20 from January 26, 1999, "until revoked by letter." Letter from Attorney Degnan to Prosecutor, dated January 27, 1999, attached to Respondent's Affirmation in Opposition to Petitioner's C.P.L. § 440.10 Motion. The Court notes that after he pled guilty and was sentenced, Smith asserted that he never was informed about this speedy-trial rights waiver. As noted above, that assertion is not credible, especially given Smith's failure to ever raise the issue of delay at any of his court appearances. Given the express, written waiver of his speedy trial rights, which was never revoked, a motion to dismiss based on an alleged violation of C.P.L. §§ 30.30 and 30.20 would not have succeeded. The Second Circuit has explained that "the failure to make a meritless argument does not rise to the level of ineffective assistance[.]" *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (citing *United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir.), *cert. denied*, 506 U.S. 979 (1992)). Smith's counsel cannot be faulted for failing to pursue a baseless motion, nor can Smith demonstrate that he was prejudiced thereby. *See id.* (denying an ineffective assistance of counsel claim, in part, because the motions not pursued by counsel were without merit); *accord*, *e.g.*, *Akwuba v. United States*, Nos. 01 Civ. 3057(SWK)(FM), 96 Cr.

-16-

1159(SWK), 2007 WL 1789010, at *6 (S.D.N.Y. June 7, 2007) ("[A]ll of the arguments Akwuba

faults his counsel for not raising were meritless. Therefore, Akwuba cannot show that his

counsel's performance was objectively unreasonable, or that the result of his trial would likely

have been different had his counsel raised the arguments that Akwuba now claims he should

have raised.") (citing *Kirsh*, 54 F.3d at 1071).

Respondent argues that even had the motion to dismiss Indictment 2000-85 on speedy

trial grounds been successful, Smith still faced "an identical set of charges, plus three Penal Law

felonies," Resp't Mem. at 7 (Dkt. #5), taking into account the two superior court informations

(Nos. 2000-254W and 2000-255W) and the pending domestic abuse charges. This is a further

reason for finding that Smith has failed to establish how he was prejudiced by trial counsel's

failure to move to dismiss Indictment 2000-85 on speedy trial grounds. As respondent points out,

had defense counsel made a speedy trial motion after expressly agreeing not to make one, he

could have endangered the favorable plea agreement which he had negotiated for his client.

Rather than demonstrating ineffectiveness, such a decision shows that defense counsel

considered his client's potential sentencing exposure and made a reasonable, strategic decision.

based on his client's interests.

For all of the foregoing reasons, the Court recommends that Smith's claims of ineffective

assistance of trial counsel be dismissed.

## V.    Conclusion

For the reasons set forth above, the Court recommends that the petition for a writ of

habeas corpus filed by be **DENIED**. Furthermore, the Court finds that petitioner has not made a

"substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).

-17-

Therefore, the Court recommends that no Certificate of Appealability should issue with respect

to any of petitioner's claims.

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  August 1, 2007
       Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

-19-

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  Rochester, New York
August <u>1</u>, 2007.